Jihad M. Smaili, Esq. [262219]
Adam K. Obeid, Esq. [247188]
**SMAILI & ASSOCIATES, PC**
Civic Center Plaza Towers
600 W. Santa Ana Blvd., Suite 202
Santa Ana, California 92701
714-547-4700
714-547-4710 (facsimile)
jihad@smaililaw.com
adam@smaililaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| LOU MOUA, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>OPTUM SERVICES, INC., a corporation form unknown; UNITED HEALTH CARE, a corporation form unknown; and DOES 1—10, inclusive,<br><br>Defendants. | **Case No.: 8:17-cv-01717-CJC (DFMx)**<br>Assigned for all purposes to the Hon. Cormac J. Carney<br>Room 9B<br><br>**PLAINTIFF LOU MOUA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS**<br><br>**<u>Hearing</u>:**<br>**Date:        January 22, 2018**<br>**Time:        1:30pm**<br>**Room:       9B**<br><br>Complaint Filed:   August 4, 2017<br>Date of Trial:      None Set |

# TABLE OF CONTENTS

1.    REQUEST FOR JUDICIAL NOTICE: ..................................................... 1

2.    INTRODUCTION: ................................................................................ 1

3.    STATEMENT OF FACTS: .................................................................... 2

   A.   Plaintiff's Employment With Defendant ............................................. 2

   B.   Defendant's Documents Show that the Arbitration Policy Is Mandatory ................. 3

   C.   Defendant's Agreement References AAA Rules Without Providing Them to Plaintiff. .................................................................................... 3

   D.   Defendant's Policy Lists Only Employees' Claims Based for "Wrongful Discharge," "Discrimination," "Retaliation," etc., as Subject to Arbitration. .................. 4

   E.   Defendant Has Plaintiff Sign and Affirm that "I Agree" to Arbitrate Her Claims, Without Reciprocal Language. .......................................... 5

   F.   Defendant's Unilateral Right to "Alter or Terminate" the Clause. .......................... 5

   G.   Defendant's Policy Provides for "Confidentiality" of the Entire Process. ............... 5

   H.   Defendant's Policy Limits Plaintiff's Right to Discovery. ...................................... 6

4.    LEGAL ARGUMENT ........................................................................... 7

   A.   THE FEDERAL ARBITRATION ACT DOES NOT PREEMPT THE APPLICATION OF CALIFORNIA LAWS GOVERNING UNCONSCIONABILITY AND GENERAL CONTRACT LAW PRINCIPLES ........................................ 7

   B.   THE ARBITRATION AGREEMENT IS ILLUSORY AND, THEREFORE, NOT AN ENFORCEABLE CONTRACT. ..................................................... 9

   C.   DEFENDANT'S ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE. ........................................................................... 11

1.    The Strong Public Policy Favoring Arbitration Does Not Extend to Unconscionable Agreements. ....................................................................... 11

2.    Defendant's Agreement Is Highly Procedurally Unconscionable. ...................... 11

   a)    The Clause Is Both Mandatory and Non-Negotiable. ..................................... 11

   b)    The Clause Fails to Disclose All Arbitration Rules. ....................................... 12

   c)    Cumulatively, the Clause Is "Highly" Procedurally Unconscionable.............. 12

3.    Defendant's Arbitration Clause Contains Non-Severable Substantively Unconscionable Terms........................................................................................ 12

   a)    Defendant's Arbitration Clause Is Substantively Unconscionable Because It Is Unilateral. ......................................................................................... 12

   b)    Defendant Retains the Unilateral Right to "Amend," "Modify," or "Terminate" the Arbitration Agreement................................................................ 13

   c)    The Second Appellate District Decision in Peleg Is Controlling.................. 14

   d)    Defendant's Agreement Is Invalid Because It Is Unilateral. ......................... 15

   e)    Defendant's Grievance Procedure Is Substantively Unconscionable............ 15

   f)    Defendant's Confidentiality Provision Is Substantively Unconscionable. ... 16

   g)    Defendant's Limit on Plaintiff's Right to Discovery, Without Relief for Additional Discovery by Request, is Substantively Unconscionable. ................. 16

5.    CONCLUSION ..................................................................................................... 18

# Table Of Cases

*Allied-Bruce Terminix Cox., Inc. v. Dobson*
(1995) 513 U.S. 265 ................................................................................ 7

*Armendariz v. Foundation Health Psychare Services, Inc.*
(2000) 24 Cal. 4th 83 ..................................................................... passim

*AT&T Mobility LLC v. Concepcion*
(2011) 131 S. Ct. 1740 ............................................................................ 8

*Brodke v. Alphatec Spine*
(2008) 160 Cal.App.4th 1569 ............................................................... 11

*Chan v. Drexel Burnham Lambert Inc.*
(1986) 178 Cal.App.3d 632 .................................................................... 1

*Chavarria v. Ralphs Grocery Co.*
(9th Cir. 2013) 733 F.3d 916 ................................................................. 8

*Davis v. O'Melveny & Myers*
(9th Cir. 2007) 485 F.3d 1066 ....................................................... 12, 16

*Doctor's Assocs., Inc. v. Casarotto*
(1996) 517 U.S. 681 ................................................................................ 7

*Ferguson v. Countrywide Credit Indus.*
(9th Cir. 2002) 298 F.3d 778 ............................................................... 17

*Fitz v. NCR Corp.*
(2004) 118 Cal.App.4th 702 ........................................................... 12, 17

*Flores v. Transamerica Homefirst*
(2001) 93 Cal.App.4th 846 ................................................................... 11

*Harper v. Ultimo*
(2003) 113 Cal.App.4th 1402 ......................................................... 11, 12

*Higgins v. Superior Court*
(2006) 140 Cal.App.4th 1238 ............................................................... 13

*Ingle v. Circuit City Stores, Inc.*

(9th Cir. 1999) 328 F.3d 1165 ........................................................................ 14

*Martinez v. Master Protection Corp.*

(2004) 118 Cal.App.4th 107 ................................................................... 11, 17

*McManus v. CIRC World Markets Corp.*

(2003) 109 Cal.App.4th 76 ............................................................................ 7

*Murphy v. Check 'N' Go of California, Inc.*

(2007) 156 Cal.App.4th 138 ........................................................................ 12

*Nyulassy v. Lockhead Martin Co.*

 (2004) 120 Cal.App.4th 1267 ...................................................................... 15

*O'Hare v. Municipal Resource Consultants*

(2003) 107 Cal.App.4th 267 ........................................................................ 17

*Ontiveros v. DHL Express (USA), Inc.*

(2008) 164 Cal.App.4th 494 ........................................................................ 17

*Peleg v. Neiman Marcus Group, Inc.*

(2012) 204 Cal.App.4th 1425 ........................................................ 1, 9, 13, 14

*Perry v. Thomas*

(1987) 482 U.S. 483 ...................................................................................... 7

*Platt Pacific, Inc. v. Andelson*

(1993) 6 Cal.4th 307 ...................................................................................... 8

*Samaniego v. Empire Today*

(2012) 205 Cal.App.4th 1138 ...................................................................... 12

*Sanchez v. Valencia Holding Company, LLC*

(2011) 201 Cal. App. 4th 74 .......................................................................... 8

*Sonic-Calabasas A, Inc. v. Moreno*

(2013) 57 Cal.4th 1109 .................................................................................. 8

*Sparks v. Vista Del Mar Child & Family Services*

(2012) 207 Cal.App.4th 1511 ...................................................................... 10

*Trivedi v. Curexo Technology Corp.*

OPPOSITION TO MOTION TO COMPEL ARBITRATION
Case No. 8:17-cv-01717-CJC

(2010) 189 Cal.App.4th 387 ............................................................................... 12

*Volt Information Sciences, Inc. v. Board Trustees of Leland Stanford Junior University*

 (1989) 489 U.S. 468 ......................................................................................... 7

**Statutes**

*Civil Code* §1670.5 ............................................................................................. 17

**Treatises**

Chin, et al., *Employment Litigation* (The Rutter Group, 2011) ......................... 12

## 1.   **REQUEST FOR JUDICIAL NOTICE**:

Plaintiff requests that the Court take judicial notice of U.S. District Court of California – Central District, Case No. 2:14-cv-01741-DOC (JEMx)(*Reyes v. United Healthcare Services, Inc.*), and the Order issued by the Hon. David O. Carter, <u>denying</u> a nearly identical motion to compel arbitration brought by the same Defendant, the same law firm, and involving nearly identical facts and the same arbitration agreement at issue in this case.  Plaintiff contends that the analysis and opinion of Judge Carter, as explained in the Order denying the motion to compel arbitration, is equally applicable in this action.

## 2.   **INTRODUCTION**:

Defendants Optum Services, Inc. ("Optum"), and, United HealthCare Services, Inc.'s ("UHG")(jointly referred to as "Defendant") motion to compel enforcement of its internal grievance and arbitration procedures cannot be granted for multiple reasons.

First, "Arbitration is recognized as a matter of contract, and a party cannot be forced to arbitrate something in the absence of an agreement to do so." *Chan v. Drexel Burnham Lambert Inc.* (1986) 178 Cal.App.3d 632, 640. Plaintiff Lou Moua ("Plaintiff" and/or "Moua") should not be required to arbitrate her claims when, as illustrated below, she never entered into an enforceable contract which, itself, is wholly unconscionable.

Second, Defendant's arbitration agreement is unenforceable because it is illusory, as it provides Defendant with the unambiguous and express ability to unilaterally modify the arbitration agreement at its whim, regardless of whether a claim has been filed with Defendant, has accrued, or is otherwise known. "An employer's unrestricted right to amend, modify, or terminate an arbitration agreement at any time renders the agreement illusory." *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1461.

Third, the arbitration agreement at issue is procedurally unconscionable, as

not only is it mandatory and non-negotiable, but the clause fails to disclose all arbitration rules as well, without even providing a source for an employee to acquire such rules.  Not only is an employee, such as Plaintiff, forced to enter into an agreement without the ability to negotiate, but she also is completely unaware of any and all additional rules that would apply because Defendant never provided Plaintiff with the same.

Fourth, the arbitration agreement is substantively unconscionable, as per the terms of the agreement, because only Plaintiff is bound by the clause, whereas Defendant holds the unilateral right to amend, modify or terminate the arbitration clause, without actual notice to any employee, and without regard to whether a claim has been filed in arbitration or whether such claims have accrued or are otherwise known.  Additionally, the arbitration agreement requires Plaintiff to submit to an inherently unfair grievance procedure, requires that arbitration be completely confidential, and significantly limits Plaintiffs right to discovery.  Thus, for the reasons stated above and as the foregoing establishes, Defendant's motion to compel enforcement of its internal grievance and arbitration procedures should be denied.

## 3.   STATEMENT OF FACTS:

### A. Plaintiff's Employment With Defendant.

Plaintiff began working for Optum as a Claims Representative in January 2005. (Moua Dec. ¶3).  According to Defendant's Human Resource Director, Susan A. Weedman, however, Plaintiff was provided with an offer of employment letter dated March 18, 2008. (see Weedman Dec. ¶5 and Def's Ex. 1).  In any event, the offer letter from Defendant, marked as Defendant's Exhibit "1," states that, *inter alia*, employment is subject to consent to an arbitration agreement, and, that the arbitration agreement is a binding contract on Plaintiff and Defendant.

When Plaintiff was hired by Defendant, however, Plaintiff was never informed about any arbitration agreement, let alone the arbitration agreement

OPPOSITION TO MOTION TO COMPEL ARBITRATION
Case No. 8:17-cv-01717-CJC

marked as Defendant's Exhibit "3". (Moua Dec. ¶4). Plaintiff was never informed about how an arbitration agreement worked or whether it was required or optional. (Moua Dec. ¶5).  Plaintiff was not provided with any of the arbitration rules, including those of the American Arbitration Association ("AAA"). (Moua Dec. ¶6).  Moreover, Defendant never explained the arbitration agreement to Plaintiff and Plaintiff did not know what an arbitration agreement was when she purportedly "signed" (allegedly via electronic method) the document. (Moua Dec. ¶7). Further, Plaintiff was never given an opportunity to negotiate any of the terms of the arbitration agreement. (Moua Dec. ¶8).  Likewise, Plaintiff was not told by Defendant that she could opt out of the arbitration agreement. (Moua Dec. ¶9).

**B. Defendant's Documents Show that the Arbitration Policy Is Mandatory.**

Defendant's Arbitration Policy states, in pertinent part, that "arbitration is the exclusive forum for the resolution" of employment disputes. (see Defendant's Exhibit "3" at Section B, Paragraph 1).  The Policy states that the parties "waive their right to trial before a judge or jury." *Id*.  Further, Plaintiff's offer letter states that acceptance of the Arbitration Policy is a condition of employment. (see Defendant's Exhibit "1" at Page 2 of 17 under "Conditions of Your Employment"). There is no provision allowing an employee to "opt out" of the arbitration agreement.

**C. Defendant's Agreement References AAA Rules Without Providing Them to Plaintiff.**

Defendant's Arbitration Policy states that the policy will be governed by the rules of the American Arbitration Association ("AAA"). (see Defendant's Exhibit "3" at Section C, Paragraph 1).  However, Plaintiff was not provided with any of the arbitration rules, including those of the AAA when she purportedly agreed to the arbitration agreement. (Moua Dec. ¶6).

///

### D. Defendant's Policy Lists Only Employees' Claims Based for "Wrongful Discharge," "Discrimination," "Retaliation," etc., as Subject to Arbitration.

Defendant's arbitration clause specifically lists only employee-based claims as subject to arbitration, never listing employer-based claims:

> The disputes covered under this Policy include any dispute between an employee and any other person where: (1) the employee seeks to hold UnitedHealth Group liable on account of the other person's conduct, or (2) the other person is also covered by this Policy and the dispute arises from or relates to employment, including termination of employment, with United Health Group. The disputes covered under the Policy also include any dispute UnitedHealth Group might have with a current or former employee which arises or relates to employment.

> A dispute is based on a legal claim and is subject to this Policy if it arises from or involves a claim under any federal, state or local statute, ordinance, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but not limited to, the following: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, and all applicable amendments and regulations, state human rights and non-discrimination laws; whistleblower or retaliation claims; breach of contract, promissory estoppel, or any other contract claim, and defamation, employment negligence, or any other tort claim. Claims excluded from arbitration under the Policy are claims for severance benefits under the UnitedHealth Group Severance Pay Plan, claims for benefits under UnitedHealth Group's other ERISA benefits plans and claims for benefits under UnitedHealth Group's Short-Term Disability Plan. A separate arbitration policy applies to certain of these benefits-related claims.  Further information can be found in your benefits handbook. (Exh. 1, pp. 1).

OPPOSITION TO MOTION TO COMPEL ARBITRATION
Case No. 8:17-cv-01717-CJC

### E. Defendant Has Plaintiff Sign and Affirm that "I Agree" to Arbitrate Her Claims, Without Reciprocal Language.

Defendant's arbitration clause consistently states that Plaintiff must arbitrate her potential claims without reciprocal language as to Defendant. Further, Plaintiff, not Defendant, was required to "sign" the agreement. (Def's Ex. "3" at Pg. 38). Moreover, the Policy became effective, "for all other employees of UnitedHealth Group or its subsidiaries," as of January 1, 1996, but the Policy does not state it was effective for UnitedHealth Group on that date. (Def's Ex. "3" at Section E).

### F. Defendant's Unilateral Right to "Alter or Terminate" the Clause.

Defendant's policies expressly gave Defendant – but not its employees – the right not only to "amend" or "modify" the Policy but to "terminate" the Policy as well. (Def's Ex. "3" at Section D).  Defendant's unilateral right at Section D, "Amendment or Termination of Arbitration Policy," provides:

> UnitedHealth Group reserves the light to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days notice of its intent and the substance of any amendment, modification, or termination of the Policy. Notice may be effected by the positing of the notice on the UnitedHealth Group intranet website. The Policy may only be amended, modified, or terminated in writing, effective on January 1 of any year, by the authority of the Senior Executive-for Human Capital.

### G. Defendant's Policy Provides for "Confidentiality" of the Entire Process.

Defendant's arbitration policy also provides for complete confidentiality of the arbitration process, arbitration results, settlements, and involved mediations. Specifically, at Section C(8), the policy provides:

> All proceedings under this Policy are private and confidential, unless applicable law provides to the contrary.  The arbitrator shall maintain the privacy and confidentiality of the arbitration hearing

OPPOSITION TO MOTION TO COMPEL ARBITRATION
Case No. 8:17-cv-01717-CJC

unless applicable law provides to the contrary. The arbitrator shall have the authority to make appropriate rulings to safeguard that confidentiality. (Def's Ex. "3" at Section C(8))

**H. Defendant's Policy Limits Plaintiff's Right to Discovery.**

Defendant's policies limit Plaintiff's right to discovery she would otherwise be accorded through litigation.  The arbitration policy provides, in pertinent part, at Section C(14), the following:

a. Interrogatory- Each party shall be entitled to propound and serve upon the other party **one interrogatory** in a form consistent with Rule 33 of the Federal Rules of Civil Procedure and which shall be **limited to the identification of potential witnesses**. "Identification" means that a party must identify each witness's name, current address and telephone number, and a brief description of the subject of testimony.

b. Requests for Production of Documents - Each party shall be entitled to propound and serve upon the other party **one set** of Request for the Production of Documents in a form consistent with Rule 34 of the Federal Rules of Civil Procedure and which shall be limited in number to twenty-five (25) requests (including subparts, which shall be counted separately). Parties reserve the right to make objections to any document request on the grounds that the request is irrelevant, overly broad, vague or burdensome, or any other good faith objection under the Federal Rules of Civil Procedure.

c. Depositions - Each party shall be entitled to conduct a **maximum of two (2) eight-hour days of depositions** of witnesses or of the parties in accordance with the procedures set forth in Rule 30 of the Federal Rules of Civil Procedure. In addition, each party shall be entitled to conduct a maximum of one (1) eight-hour deposition of expert witnesses designated by the other party. (Def's Ex. "3" at Section C(14))(emphasis added).

Additionally, there is no provision provided that allows Plaintiff to request additional discovery, whether by good cause, substantial need, or any other reason.

OPPOSITION TO MOTION TO COMPEL ARBITRATION
Case No. 8:17-cv-01717-CJC

## 4.   LEGAL ARGUMENT

### A. THE FEDERAL ARBITRATION ACT DOES NOT PREEMPT THE APPLICATION OF CALIFORNIA LAWS GOVERNING UNCONSCIONABILITY AND GENERAL CONTRACT LAW PRINCIPLES

The Federal Arbitration Act ("FAA") has no express preemption provision and does not reflect a congressional intent to occupy the entire field of arbitration or contract law. *Volt Information Sciences, Inc. v. Board Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 477.  Instead, the FAA only preempts state laws whose application would frustrate the will of Congress by undermining the Act's policy goals. *Id*. at 477—478.  Indeed, the U.S. Supreme Court held that, "States may regulate contracts including arbitration clauses, under general contract law principles." *Allied-Bruce Terminix Cox., Inc. v. Dobson* (1995) 513 U.S. 265, 281.

The FAA incorporates a savings clause that provides that arbitration clauses will not be enforced if there are grounds under state contract law for invalidating the clause.  Accordingly, any apparent preemptive effect is limited by California's contractual unconscionability law, which applies to all contracts and contractual clauses. *McManus v. CIRC World Markets Corp.* (2003) 109 Cal.App.4th 76, 92. Additionally, the U.S. Supreme Court has recognized that the defense of unconscionability is available to a party challenging an arbitration agreement. *See Doctor's Assocs., Inc. v. Casarotto* (1996) 517 U.S. 681, 687 ("[G]enerally applicable contract defenses such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA].")  In other words, state contract law applies to arbitration clauses. *See Perry v. Thomas* (1987) 482 U.S. 483, 492-93 ("An agreement to arbitrate is ... enforceable, as a matter of federal law, 'save upon such grounds as exist at law or in equity for the revocation of any contract.' ... Thus state law whether of legislative or judicial

origin, is applicable if that law arose to cover issues concerning the validity, revocability, and enforceability of contracts generally.")

Put more specifically, the FAA does not even apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally. *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313. As such, any contention otherwise, including through reference to *AT&T Mobility LLC v. Concepcion* (2011) 131 S. Ct. 1740, is inapposite, as subsequent cases have followed the aforementioned reasoning.

Two appellate level decisions have already specifically held that the decision in *AT&T Mobility*, *supra*, does not preclude the California Law analysis of unconscionability and resultant unenforceability of contracts in actions like the instant matter. *Sanchez v. Valencia Holding Company, LLC* (2011) 201 Cal. App. 4th 74, expressly held that the United States Supreme Court's decision in *AT&T Mobility*, *supra*, does not preclude state law determination of whether the agreement is unconscionable. Specifically, in *Sanchez v. Valencia Holding Company*, *supra*, the Court expressly held, "Before applying *Armendariz*, to the present case, we note that *Concepcion*, *supra*, 131 S.CT.1740, does not preclude the application of the unconscionability doctrine to determine whether an arbitration provision is unenforceable." Indeed, other cases, including *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109 (state courts may continue to enforce unconscionability rules that do not "interfere with fundamental attributes of arbitration. "), and, *Chavarria v. Ralphs Grocery Co.* (9th Cir. 2013) 733 F.3d 916 (arbitration agreement held procedurally and substantively unconscionable) have followed suit, both illustrating that California courts will continue to closely scrutinize arbitration agreements under state law governing unconscionability, regardless of *AT&T Mobility*.

It is clear that the FAA, as well as *AT&T Mobility*, do not preclude this

Court from analyzing the enforceability of the arbitration agreement at issue under California law.

## B. THE ARBITRATION AGREEMENT IS ILLUSORY AND, THEREFORE, NOT AN ENFORCEABLE CONTRACT.

The arbitration agreement at issue is not an enforceable contract in the first place because it is illusory. "An employer's unrestricted right to amend, modify, or terminate an arbitration agreement at any time renders the agreement illusory." *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1461.   In *Peleg*, an employee alleged violations of FEHA and related tort and contract claims against his former employer. *Id.* at 1428.   The employer had the employee sign a mandatory arbitration agreement. *Id.* at 1433.   As here, the employer in *Peleg* had the unilateral ability to "amend, modify, or revoke" the arbitration agreement.

*Peleg* highlighted the fundamental unfairness of illusory, one-sided arbitration agreements, as follows:

> Two hypotheticals demonstrate the mischief permitted by an illusory arbitration agreement. For instance, Neiman Marcus could learn about a California employee's sexual harassment claim when the employee raises the issue with the personnel department in an effort to resolve the dispute informally. The company then conducts an investigation, determines the claim might have merit, and decides to change the Agreement to provide greater protection against liability. It gives written notice to employees that the Agreement is being amended by stating: (1) a sexual harassment claim brought by a California employee shall be heard by a panel of *three* arbitrators; (2) the arbitration award in such a case shall be subject to judicial review for errors of fact and law; and (3) the current choice-of-law clause shall not apply to that type of claim and instead California law shall govern the Agreement and arbitration. Because the parties appear close to a settlement of the sexual harassment matter, the employee does not file a claim with the ACT within 30 days after notice. Ultimately, the dispute is not amicably resolved, and, upon

initiating arbitration, the employee is bound by the new provisions.

> To take another example, Neiman Marcus decides to reorganize its sales structure in an area on the East Coast. In one state, some stores close, resulting in the layoff of several at-will employees. Shortly after the layoffs are completed, the federal circuit court for that state renders a decision narrowly construing the exceptions to the at-will doctrine, interpreting state law more favorably to employers than the state courts. Neiman Marcus promptly amends the Agreement to shorten the notice period from 30 days to 10, effective immediately, and terminates the Agreement so it does not apply in the affected state. No employees file a claim with the ACT before the 10-day period expires. More than 10 days after notice of the changes, some employees file individual suits in state court alleging common law claims for termination in violation of public policy, termination in violation of an implied-in-fact contract, and breach of the covenant of good faith and fair dealing. Neiman Marcus removes the civil actions to the appropriate federal district courts. (See 28 U.S.C. § l441(b)). It promptly seeks to dismiss the suits for failure to state a claim upon which relief can be granted, relying on the recent federal circuit decision. (See Fed. Rules Civ. Proc., rule 12(b)(6)).
> *Peleg*, 204 Cal.App.4th at 1458-1459.

Similarly, *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, held, "An agreement to arbitrate is illusory if, as here, the employer can unilaterally modify the handbook." As in *Peleg*, the *Sparks* court held that an employer's right to "amend," "revise[]," or "modify" an arbitration clause made the clause unenforceable as illusory. *Id*. at 1523.

In the present case, Defendant's arbitration policy expressly gave Defendant – but not its employees – the right not only to "amend" or "modify" the arbitration agreement, but to "terminate" the agreement as well.  Defendant's unilateral right to modify the arbitration agreement makes such an agreement illusory, and therefore, defeats any finding that a contract was formed.

### C. DEFENDANT'S ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE IT IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE.

#### 1. The Strong Public Policy Favoring Arbitration Does Not Extend to Unconscionable Agreements.

"The strong public policy ... in favor of resolving disputes by arbitration does not extend to an arbitration agreement permeated by unconscionability." *Flores v. Transamerica Homefirst* (2001) 93 Cal.App.4th 846, 856. "Nor is there a public policy which would compel the enforcement of a contract on behalf of a party who denies the very existence of the contract sought to be enforced." *Brodke v. Alphatec Spine* (2008) 160 Cal.App.4th 1569, 1577.

An arbitration clause, like any contract, is unenforceable if it is both procedurally and substantively unconscionable. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal. 4th 83, 114. "There is a sliding scale where the greater the evidence of procedural unconscionability, the less evidence is needed of substantive unconscionability." *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406. Here, both forms of unconscionability are present to a high degree.

#### 2. Defendant's Agreement Is Highly Procedurally Unconscionable.

##### a)     The Clause Is Both Mandatory and Non-Negotiable.

First, procedural unconscionability occurs when "the arbitration agreement is adhesive." *Armendariz* at 114—115. When an employer makes an employee sign an arbitration clause as a condition of employment, with no meaningful opportunity to negotiate its terms, the agreement is procedurally unconscionable. *Id.* at 115; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 114

(arbitration clause presented on a "take it or leave it" basis is procedurally unconscionable); *Murphy v. Check 'N' Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144—145; Chin, et al., *Employment Litigation* (The Rutter Group, 2011), §§ 18:645-18:647.

> **b)** **The Clause Fails to Disclose All Arbitration Rules.**

Second, arbitration clauses that fail to disclose or provide all rules governing arbitration are procedurally unconscionable. *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702. Without having all of the rules, an employee cannot know "the full ramifications of the arbitration agreement." *Id.* at 721; *Harper*, 113 Cal.App.4th 1402. "Numerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound, supported a finding of procedural unconscionability." *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393; *Samaniego v. Empire Today* (2012) 205 Cal.App.4th 1138, 1146. Without defining or providing any of the applicable AAA rules to Plaintiff, Defendant's arbitration clause refers to AAA and the National Arbitration and Mediation as providing arbitrators. (Def's Ex. "3" at Section C, Paragraph 1).

> **c)** **Cumulatively, the Clause Is "Highly" Procedurally Unconscionable.**

The procedurally unconscionable aspects of Defendant's arbitration clause cumulatively render it "highly" unconscionable. *Armendariz*, 24 Cal.4th at 113-114; *Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1075.

> **3. Defendant's Arbitration Clause Contains Non-Severable Substantively Unconscionable Terms.**

> **a) Defendant's Arbitration Clause Is Substantively Unconscionable Because It Is Unilateral.**

Defendant's forms reflect the unilateral nature of the arbitration clause on a second ground. In Defendant's boilerplate language, only Plaintiff – not Defendant — expressly agrees to arbitrate potential claims, and only Plaintiff is required to

OPPOSITION TO MOTION TO COMPEL ARBITRATION
Case No. 8:17-cv-01717-CJC

sign the Policy. (see Def's Ex. "3").

*Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, is directly controlling, holding that, "I agree" language in an arbitration clause evinces lack of mutuality, despite other language that "all disputes" were subject to arbitration: "In this case, the arbitration provision requires only petitioners to submit their claims to arbitration. The clause repeatedly includes 'I agree' language, with the 'I' being a reference to the former employees without comparable language applying to the defendant employers." *Id.* at 1253.

The *Higgins* Court rejected the argument that the phrase making "all disputes" "subject to arbitration" made the agreement mutual as applying to "all disputes" brought by both sides. The *Higgins* Court described its reasoning, applicable here, as follows:

> [D]efendants claim that the arbitration provision is bilateral, because "all disputes or controversies arising under this Agreement or any of its terms, any effort by any party to enforce ... this Agreement ... and any and all disputes or controversies relating to my appearance or participation in the Program, shall be resolved by binding arbitration." Thus, "all disputes" are subject to arbitration, and either side may move to compel. *But they miss the point: only one side (petitioners) agreed to that clause*. *Higgins* at 1253-1254 (emphasis added).

### b) Defendant Retains the Unilateral Right to "Amend," "Modify," or "Terminate" the Arbitration Agreement.

"An employer's unrestricted right to amend, modify, or terminate an arbitration agreement at anytime renders the agreement illusory." *Peleg*, *supra*, 204 Cal.App.4th at 1461. Here, Defendant gave itself the unilateral right to "amend, modify or terminate" any part of its Arbitration Policy or terms. Both California courts and the majority of federal courts, including the Ninth Circuit, hold that a defendant's "unilateral right to terminate or modify the arbitration agreement renders it substantively unconscionable." *Ingle v. Circuit City Stores, Inc.* (9th Cir.

1999) 328 F.3d 1165, 1179 (applying California law); *Peleg*, *supra*, at 15; Chin, *supra*, §18:660.

### c) The Second Appellate District Decision in Peleg Is Controlling.

The Second Appellate District in *Peleg* rejected an employer's arbitration clause as illusory and unconscionable because of the employer's unilateral ability to amend or terminate it. *Peleg* at 1461. The *Peleg* Court held, "An employer's *unrestricted* right to amend, modify, or terminate an arbitration agreement at anytime renders the agreement illusory." *Id*. at 1461. Importantly, such an agreement here, like in *Peleg*, is inherently one-sided because not only does it provide Defendant with a unilateral right to modify or terminate the arbitration agreement, with only a 30 day notice, but that Defendant need only provide notice by posting on the company's intranet website. More significant, however, is that the arbitration agreement does not exclude filed, accrued, or known claims, a concern that the *Peleg* Court specifically raised and that applies here.

> We do not suggest the Agreement is unenforceable solely because it exempts filed claims from contract changes. Rather, the Agreement fails because it exempts only filed claims – it does not go far enough. The Agreement should also exempt claims that have accrued or are known to the employer that are not filed within 30 days. Otherwise, Neiman Marcus would have the unfettered unilateral right to modify the arbitration process or terminate the Agreement as to those claims. It would "retain[ ] the ability to pick and choose the claims its wants to arbitrate." *Id*. at 1457.

Here, the arbitration agreement at issue is even more one-sided than the *Peleg* agreement, as no exceptions are made for filed claims, let alone accrued claims or known claims that have yet to be filed. Effectively, Defendant has the right to unilaterally amend the arbitration agreement in a manner favorable to Defendant, regardless of whether a claim is filed, unfiled, or accrued, and to do so

OPPOSITION TO MOTION TO COMPEL ARBITRATION
Case No. 8:17-cv-01717-CJC

without notice except through indirect posting on the company's intranet website.

### d) Defendant's Agreement Is Invalid Because It Is Unilateral.

When an arbitration agreement is substantively unconscionable because it lacks mutuality, the entire agreement is invalidated. In *Armendariz*, the California Supreme Court held:

> [I]n the case of the agreement's lack of mutuality, such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. ... Because a court is unable to cure this unconscionability through severance or restriction, and is not permitted to cure it through reformation and augmentation, it must void the entire agreement. ... [W]hether an employer is willing, now that the employment relationship has ended, to allow the arbitration provision to be mutually applicable ... does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. *Armendariz* at 124—125.

The agreement does not list any claim that Defendant would bring including claims based on employment, trade secrets, and/or injunctive relief.  Such a lack of mutuality is unconscionable.

### e) Defendant's Grievance Procedure Is Substantively Unconscionable.

Defendant's grievance procedure is substantively unconscionable because it requires employees to follow a multi-step internal dispute resolution ("IDR") grievance process before arbitration. (Def's Ex. "3").   *Nyulassy v. Lockhead Martin Co.* (2004) 120 Cal.App.4th 1267, 1283, rejects such a mandatory grievance clause as substantively unconscionable:

///

[W]hile on its face [the procedure] may present a laudable mechanism for resolving employment disputes informally, it connotes a less benign goal. *Given the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism [i.e., one without a neutral mediator] suggest that defendant would receive a "free peek" at plaintiff's case*, thereby obtaining an advantage if and when plaintiff were to later demand arbitration. (emphasis added).

### f) Defendant's Confidentiality Provision Is Substantively Unconscionable.

An overly broad confidentiality provision is substantively unconscionable, as such provisions favor the employer because they prevent the employee from contacting other employees to obtain helpful information and also prevent other employees from building similar claims. "Even facially mutual confidentiality provisions can effectively lack mutuality and therefore be unconscionable." *Davis*, *supra*, 485 F.3d at 1078.

### g) Defendant's Limit on Plaintiff's Right to Discovery, Without Relief for Additional Discovery by Request, is Substantively Unconscionable.

Adequate discovery is indispensable for the vindication of statutory claims. *Armendariz*, *supra*, 24 Cal.4th at 104.  Such discovery is grossly deficient here. Defendant drafted the agreement originally to restrict discovery unreasonably to ***two depositions, only one set of 25 requests for production of documents, and only one interrogatory that is restricted to seeking the identities of witnesses only***. Additionally, there is no provision that allows Plaintiff to seek additional discovery by any means or any reason. Arbitration agreements unduly limiting discovery evince substantive unconscionability.

///

OPPOSITION TO MOTION TO COMPEL ARBITRATION
Case No. 8:17-cv-01717-CJC

> Not only do these discovery provisions appear to favor Countrywide at the expense of its employees, but the entire agreement seems drawn to provide Countrywide with undue advantages should an employment-related dispute arise. Aside from merely availing itself of the cost-saving benefits of arbitration, Countrywide has sought to advantage itself substantively by tilting the playing field. *Ferguson v. Countrywide Credit Indus.* (9th Cir. 2002) 298 F.3d 778, 787.

Defendant's restricted discovery is unconscionable. "This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses."

> Under the terms of the ACT policy, she will have to gain approval from the arbitrator to depose all but two of them.  She will also have to gain the arbitrator's approval to access any written information regarding NCR's employment practices. ... Granting the arbitrator discretion to determine whether additional discovery is necessary, as the ACT policy does, is an inadequate safety valve. *Fitz*, *supra*, 118 Cal.App.4th at 716-717.

Such discovery limits in arbitration agreements that are applied equally to arbitrating parties are substantively unconscionable. *See Martinez*, *supra*, 118 Cal.App.4th at 118-119; see also *Fitz* at 717-718; *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 514 (provision requiring employee to show "substantial need" for additional depositions was substantively unconscionable ).

The law clearly provides that unconscionability is determined as of the time the arbitration clause is entered. *Civil Code* §1670.5(a).  *Civil Code* §1670.5(a) provides that the determination of unconscionability focuses on whether the clause was "unconscionable at the time it was made." *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 281-82; *Fitz*, *supra*, 118 Cal.App.4th at

715. "Whether an employer is willing, now that the employment relationship has ended, to allow the arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy." *Armendariz*, *supra*, 24 Cal.4th at 125.

## 5.   **CONCLUSION**

Based upon the foregoing explication of law and fact, Plaintiff Lou Moua respectfully requests that this honorable Court deny Defendant's Motion to Compel Arbitration.

DATED: January 2, 2018                                **SMAILI & ASSOCIATES, P.C.**

                                                                                            Attorneys for Plaintiff